UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:17-CV-00105-HBB

**STACEY MICHELLE LINDSEY**  PLAINTIFF

VS.

**CITY OF MUNFORDVILLE CHIEF OF
POLICE GREG ATWELL, et al.**  DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants, City of Munfordville Chief of Police Greg Atwell and Lanny Jewell, motion for summary judgment (DN 39). Plaintiff, Stacey Lindsey, has responded at DN 51. Defendants replied at DN 54. The parties have consented to the undersigned conducting all proceedings and entry of orders of final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73 (DN 33).

### STATEMENT OF FACTS

This is a civil rights action brought under 42 U.S.C. §1983 (DN 1). Plaintiff, Stacey Michelle Lindsey, claims that on February 15, 2017, she was falsely arrested by two Kentucky State Police Troopers (Id. at 13-17). The arrest stemmed from an investigation conducted by the Munfordville Police Department. Four suspects impersonated a social worker, assaulted Erica Lawler and abducted her child. Lawler recognized one of the suspects and identified her as Stacie Lindsey[1] to Defendant Jewell—a detective with Munfordville City Police—who was assigned to lead the investigation (DN 49-5 PageID # 444).

---

[1] Lawless used the spelling Stacie Lindsey, Detective Jewell recorded the spelling Stacey Lindsey.

Jewell discovered the child at Travez Lindsey's home, the child's father. Travez would not say who brought the child to his residence. Jewell returned to Lawler's apartment. She identified Amber Bunch from Bowling Green, Kentucky as one of her assailants. Using a cell phone left at the scene, Jewell contacted Amber Bunch who denied being in Munfordville and informed Jewell that her phone had been stolen. However, she admitted she knew one of the assailants, Latoyya Jones—listed as "Toya" on her phone. Jewell then contacted B.J. Lindsey who provided information about Stacey Lindsey, her sister, and Latoyya Lindsey, Stacey's daughter (DN 49-5 PageID # 445).

Jewell then contacted Kentucky State Police ("KSP") to retrieve a driver's license photograph of Stacey Lindsey in Warren County. Plaintiff Lindsey is the only Stacey Lindsey listed in Warren County. Her photograph was sent to Jewell who showed it to Lawler. Lawler positively identified Plaintiff as the Stacey Lindsey in the photograph and told Jewell she knew her personally. Sometime later Jewell received a call from Latoyya Jones. She admitted that she, Amber Bunch, Jacobi Lindsey, and Stacey Lindsey assaulted Lawler, abducted her child, and brought him to Travez Lindsey's home in Horse Cave. Jewell presented this information to the Hart County Attorney, Mike Nichols, who concurred that probable cause existed for the arrest of Stacey Lindsey. Nichols summoned Lawler to his office. She again positively identified Plaintiff Stacey Lindsey as one of her attackers (DN 49-1 Page ID # 450-51).

Sometime after this meeting, Lawler signed criminal complaints against Stacey Lindsey and the other perpetrators. Lindsey was charged with Burglary in the Second Degree, Custodial Interference, Assault in the Fourth Degree, and Impersonating a Public Servant. Pursuant to this warrant, two Kentucky State Troopers arrived at Lindsey's residence in Bowling Green, Kentucky and informed her husband that a warrant had been issued for her arrest. Lindsey vociferously

denied the charges and insisted that the troopers were arresting the wrong suspect. The troopers asked Lindsey if the driver's license photograph accompanying the warrant—the same photo Lawler used to identify her attacker—was her. She replied it was. The troopers continued to effectuate the arrest.

The next morning Lindsey's attorney contacted Chief Atwell of the Munfordville Police Department and advised him that they arrested the wrong person. After a subsequent investigation, Atwell confirmed Plaintiff Lindsey was in fact not the Stacey Lindsey involved in the assault and kidnapping. Atwell contacted Nichols who prepared an order releasing Lindsey from jail. All charges were dropped. Lindsey spent seventeen and a half hours in jail.

Lindsey's complaint sets forth causes of action under 42 U.S.C. § 1983 claiming violations of her rights to due process, to be free from false arrest and to be free from unreasonable search and seizure (DN 1). She also asserted claims under Kentucky law for assault and battery and false arrest/imprisonment. This Court previously dismissed Fourteenth Amendment Due Process; state law assault; state law battery; state law false arrest; and state law false imprisonment claims (DN 39). All that remains are Fourth Amendment claims for false arrest and imprisonment and unlawful search and seizure.

## DISCUSSION

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the basis for its motion and the parts of the record that demonstrate an absence of any genuine issue of material fact. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party shows there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present

"significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Cos., 8 F.3d 335, 339-40 (6th Cir. 1993). The Court must determine whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). All inferences that may be drawn from the facts must be viewed in the light most favorable to the nonmovant. *See* Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Defendants argue that summary judgment is required because qualified immunity shields them from liability (DN 49-1 PageID # 399). Lindsey argues that the investigation conducted by Detective Jewell was plainly incompetent, and therefore not protected by qualified immunity. *See* Malley v. Briggs, 475 U.S. 335, 341 (1986). Lindsey argues that Jewell should have "connected the dots" and discovered that she was not the Stacey Lindsey involved in the assault of Lawler. She acknowledges that once an officer acquires probable cause to arrest a suspect he is not obligated to further investigate possible exculpatory evidence but argues this does not grant officers impunity to conduct "hasty and unsubstantiated arrests" (DN 51 PageID # 577).

Piercing the shield of qualified immunity is not an easy feat. Qualified immunity sweeps broadly and affords law enforcement "ample room for mistaken judgments." Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir. 1998). Once qualified immunity is raised as a defense, it becomes the plaintiff's burden to prove that it does not apply. Johnson v. Moseley, 790 F. 3d 649, 543 (2015). Officials are protected from personal liability for civil damages so long as their conduct does not violate "clearly established statutory or constitutional rights." Everson v. Leis, 556 F. 3d 484 (6th Cir. 2009). The right at issue must be sufficiently clear that that every

reasonable official would have understood that what he is doing violates that right." Ashcroft v. Al-Kidd, 131 S. Ct. 2074, 2083 (2011).

The right at issue cannot be pleaded generally but must be sufficiently specific that a reasonable officer would understand the alleged conduct to be unconstitutional. Specificity is particularly important in the context of the Fourth Amendment, where the Court has recognized that it is difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts. Kisela v. Hughes, 138 S. Ct. 1148, 1152 (2018). Lindsey claims that her arrest deprived her of "clearly established rights, privileges, and immunities secured by the First, Fourth, and Fourteenth amendments…These rights include, but are not limited to, the right to due process of law, the right to be free of an arrest without probable cause, and the right to be free of unreasonable searches and seizures" (DN 1 PageID # 8). It is axiomatic that an individual enjoys the right to be free from arrests without probable cause. However, a law enforcement officer is entitled to qualified immunity for a wrongful arrest, even if his probable cause determination is incorrect, if a reasonable police officer in his position could have believed that probable cause to arrest existed. Avery v. King, 110 F.3d 12, 14 (6th Cir. 1997).

Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge were "sufficient to warrant a prudent man in believing that the arrestee had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). Here, Lindsey was erroneously arrested as a result of detective Jewell's investigation. Crucial to that investigation was Lawler's positive identification of Lindsey as one of her assailants. Upon being shown Lindsey's photograph, Lawler stated that she knew Lindsey personally and was adamant that Lindsey participated in her assault (DN 49-5 PageID # 445). She confirmed that identification again several days later in the office of Hart County Attorney Mike Nichols (Id.). An identification

of a suspect by an eyewitness is enough to establish probable cause, unless factual circumstances exist that creates reason for the officer to believe the eyewitness was lying or did not accurately describe what she had seen.  Ahlers v. Schebil, 188 F.3d 365 (1999).  Nothing in the record indicates Jewell had any reason to believe Lawler was lying or mistaken in her recollection of events.  In fact, her version of the story was corroborated by two neighbors who witnessed parts of the incident (DN 49-2 PageID # 416).

Lindsey argues that the weight of Lawler's positive identification is overcome by mistakes made during the course of the investigation.  Specifically, she alleges that detective Jewell either failed to recognize or chose to ignore what should have been "obvious" connections that the actual suspects in this case were related (DN 51 PageID # 577).   The abducted child was taken to his father, Travez Lindsey's, home.  Jewell used a phone left at the scene to contact a B.J. Lindsey who provided information about her sister, Stacie Lindsey, and Latoya Lindsey, Stacie Lindsey's daughter.  Jewell also spoke with Tammy Coats, a witness residing in a neighboring apartment, who positively identified Jacobi Lindsey as one of the assailants.  Lindsey argues that because all of these suspects shared the same last name, it should have been obvious to Jewell that they were all related and that she was not the same Stacey Lindsey.  While a connection can be drawn, it is not dispositive given the factual circumstances of this case.  Jewell identified Amber Bunch, a resident of Bowling Green, Kentucky early in his investigation.  She is not related any of the other suspects in the case, indicating others outside the Lindsey family were involved.  And most significantly, Lawless assured Jewell that Lindsey was one of her attackers on two separate occasions and insisted she knew her personally.

The Constitution does not guarantee that only the guilty will be arrested.  If it did, §1983 would provide a cause of action for every defendant acquitted and every suspect released.  Baker

v. McCollan, 443 U.S. 137 (1979). The presence of probable cause is a complete defense to a false arrest claim. Walker v. Schaeffer, 854 F. 2d 138, 142 (6th Cir. 1988). Even if the probable cause formulation is mistaken, a false arrest claim fails if the arrest was based on reasonably trustworthy information. Hunter v. Bryant, 502 U.S. 224 (1991). Law enforcement decisions are judged at the time they are made, not with the benefit of hindsight. Darrah v. City of Oak Park, 255 F. 3d 301 (6th Cir. 2001). The facts of Lindsey's arrest, while unfortunate, are not actionable under §1983. Detective Jewell's investigation confirmed the involvement of a Stacey Lindsey. Jewell's evidence revealed that at least other assailant resided in Bowling Green. Lawless twice identified Lindsey as one of her attackers and insisted that she knew her personally. Jewell reasonably believed that he had probable cause to arrest Lindsey. That belief turned out to be mistaken. Qualified immunity protects public officials from exactly these kinds of mistakes. Sova v. City of Mt. Pleasant, 142 F.3d 898, 902 (6th Cir. 1998). Therefore, Defendants' motion for summary judgment must be granted.

## ORDER

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment (DN 49) is **GRANTED**.

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

July 2, 2019

Copies:      Counsel